Good morning, ladies and gentlemen. Nice to see all of you. We will proceed with argument on the first case on the oral argument calendar, which is Case v. Court Executive Officer, Sonoma County. May it please the Court, my name is Stanley Goff, attorney for Appellant John Cast. I would like to reserve my last two minutes for rebuttal. Manager, on time. So, Your Honors, this brief is about, I believe, presents two issues for the Court to address. One is whether the district court erred in dismissing the claim, saying that the 11th Amendment barred the claim against the appellee. The second issue is whether the district court erred in finding that the appellee was entitled to quasi or judicial immunity based on the task or the failure to remove the appellant's name out of the criminal database. Regarding the 11th Amendment, we feel or we contend that the 11th Amendment did not bar the claim, that the appellee was sued in their individual as well as official capacity. And even if the official capacity suit is barred by the 11th Amendment, the individual capacity claim is not. Yeah, actually, as I read the district court's order, I think the district court merely said, we dismiss under the 11th Amendment to the extent it's sued in the official capacity. So the individual capacity suit can go forward, I think, is what the district court said, subject only to the qualified immunity defense. Well, I agree with you, Your Honor. Yeah. We concede that the official capacity. The hard part is not the 11th Amendment. The hard part is qualified immunities. So if you could address that, I'd appreciate it. Yes, Your Honor, I have no problem with that. Before you leave the official capacity, one of the puzzling things to me that's different about this case is that you didn't name the individual. And, in fact, there have been a number of different executives during this period of time. So where does that leave us on your individual suit? Because you just sued the officer, not the individual. Well, Your Honor, I anticipate that that question would be asked. We feel that we spelled out clear enough in the complaint that we were suing the executive officer who was in charge at that time that the incident occurred. And who was that? Excuse me, Your Honor. Who was that? Your Honor, I never ascertained the person's name. We never were able to allow to engage in discovery because the case was dismissed. We would have gladly substituted the person's name in the complaint if we were given the opportunity to ascertain that information. And we weren't given that. It is a matter of public record. Yes, Your Honor. And we did look, but we did not see the person's name. I found it. Okay. But, as I say, they're different executives. So not going outside the record. I think the argument is that actually this is a suit in official capacity only because you did not name the individual. Well, Your Honor, I respectfully disagree with that position. We clearly spelled out that the person that we were suing was the person in charge at the time of the incident. They knew who that person was. It would have been more clear for the record if we had named them, of course. But we said that this person was being sued in their individual as well as official capacity, and we feel that the Eleventh Amendment does not bar the claim regarding the individual capacity. So who did you serve? We served Sonoma County, Your Honor. But not the individual. No, we did not. Okay. Thank you. Regarding the qualified immunity or judicial and qualified immunity, excuse me, judicial and quasi-judicial immunity that's at issue here, we feel that the function of removing the appellant's name out of the database was not a discretionary act. It was mandatory. They had to do it. By operation of law, the appellant's criminal protective order was terminated, and once it was terminated, the clerk had no choice but to remove the appellant's name out of the database, which they failed to do. We feel that because it was not a discretionary act, that immunity does not apply. And the appellees are going to argue that it does because it was a judicial function. However, the cases of Antoine B. Byers and Anderson, which is a controlling case in this district because it's a United States Supreme Court case that has not been overruled, and Castillo, which is a case issued by this court, has stated that if the acts of the clerk are not discretionary, then they're not entitled to this type of immunity, and that's our argument. And what is there in the record in your complaint to suggest that it was the court executive officer who was supposed to do that as opposed to some subordinate employee within the office? Well, Your Honor, we looked. We first filed a lawsuit against the clerk's office that's not in charge or that's not part of the court system, and we got routed to the executive court officer. This person is in charge of removing or in charge of placing names in the database or removing them. This is the information that we were given, and this is why we went after this particular individual, Your Honor. But, I mean, you haven't had an opportunity to amend the complaint. We had an opportunity to amend, but it wasn't about that particular issue. Okay. And Judge Seaborg, respectfully, he honed in on these two claims, these two issues, and he dismissed the case. So we really haven't had an opportunity to really expound or conducting discovery to really make the record clear or to really precisely go after or initiate the lawsuit the way it should be done. We haven't been given the chance. And what exactly is the cause of action that you're asserting? I mean, is it a negligence claim or some sort of constitutional claim? No, Your Honor, it's a due process violation. John Cass, who's the appellant, he was forced to serve a year in prison in Washington State because the clerk failed to remove his name out of a database. This was beyond his control. It had nothing to do with him. It amounted to punishment beyond what he was already sentenced to, which is a 14th Amendment violation. And what ñ I mean, I realize we don't have a motion for qualified immunity, and that may come at a later stage of the case, but I assume you've given some thought to the question of what is the authority that clearly establishes the principle that a clerk can be subject to individual liability for not entering an order? Your Honor, that's an excellent question, and I have looked into it because that's a concern to me if we were able to get back down to the district court regarding qualified immunity. We feel that there's case law out there that just says that the clerk was mandated to remove the name out of the database, that it was not discretionary, and for that reason, that's the controlling case law that we have to show that this person should have known that they should have removed this name out of the database, and if my client was injured as a result, then they should be held liable. So is your theory based purely on case law and not statute or regulation? Yes, Your Honor. Okay. Do you want to reserve? Excuse me? Would you like to reserve your time? Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, my name is Sharon Nagel. I represent the Court Executive Officer for the Superior Court of California, County of Sonoma. This Court has recognized immunity for court employees when they perform acts that are part of the judicial function, even after the Antoine case was decided, and that was in Moravie-Brewster and also in the Castillo case. In Castillo, this Court recognized quasi-judicial immunity for a bankruptcy trustee for failure to give notice of a hearing which led to the foreclosure of the debtor's home, and the Court significantly stated that when viewed out of context or in isolation, that act, which seems like a clerical act, wouldn't be within the scope of immunity. However, when that's viewed in the context of the judicial function of adjudicating disputes, that act is entitled to immunity. I hear the adjudication had ceased, correct? It's unclear. In other words, the judicial process had been concluded, and whatever remained, arguably, was a ministerial act of, a materially ministerial act outside the judicial process. I think from the pleading, it's a little unclear as to what happened, because in one part of the complaint, it's alleged that the CPO lapsed on its own, and in another part of the complaint, it's alleged that the court executive officer failed to remove a terminating order. And in looking at the supplemental excerpts of records, one of the documents was the CPO, and on that it states in order to remove it, a terminating order needs to be sent. So it's part of this adjudicatory process of resolving the criminal dispute as well as imposing sentencing. One of the things that the court looked at in Castillo was part of this adjudicatory act, and what was the function. And the court in Castillo said that part of the function was giving notice of this adjudicatory hearing. Notice and holding the hearing and convening the hearing really couldn't be separated in a meaningful way. And here I think we have a similarity, because part of the sentencing involved the imposition of this criminal protective order and the transfer into CLETS. And the transfer into CLETS is merely how the CPO is enforced. A CPO that exists only in the courthouse is obviously not nearly as effective as a CPO that's transmitted into a database. So the clerk's action is really just an extension of that judicial function of adjudicating a dispute. What are we supposed to do? I'm coming back to Chief Judge Thomas' question at the beginning with the fact that we do not have an individual person named and served. That is to say, I'm back to the question that originally I thought was actually easy but may be hard. Is this, in fact, an individual capacity suit when the person is named in his personal and official capacity but the actual person isn't specified and there's no service on the person? Exactly. So what are we supposed to do with that? Well, our position is that that's an official capacity suit because official capacity suits are directed at the office. And as Your Honor noted, there have been several court executive officers who have gone through this position since the time the suit was filed. It's hard to conceive of an individual capacity suit that doesn't actually name an individual. Was this objection made in front of the district court? Yes, it was, Your Honor. The grounds we raised in our motion to dismiss were quasi-judicial immunity, the 11th Amendment, and failure to state a claim. As I look at the district court order, the judge does not say anything about, well, you know, if you'd named this person individually, this would be a different suit. The district judge talks about quasi-judicial immunity, which would come up only if this were an individual capacity suit. I suppose that's true, Your Honor, yes. Yeah, the district court didn't specifically go through the elements of an individual or official capacity suit in its opinion. What's your view on whether or not this duty is mandatory or not on the court executive? I'm talking about removing the information from the database. I don't think that's a... I know we're getting down the road here in the case a little bit, but I'm just asking. I think that it's mandatory if there is an order. I think there has to be a terminating order. A court executive officer, assuming for purposes of argument that it is the court executive officer who is personally tasked with removing the orders from CLATS, I think that the court executive officer can't decide on his or her own, can't make that decision by himself to terminate an order. That has to come from a judicial terminating order, and the clerk is merely, or whoever it is that transmits it into CLATS, is merely carrying out that function. And is that true even when I thought the order here expired after some set period of time? Am I wrong about that? That was one of the allegations in the complaint, that it expired as part of the probation. But in looking at the supplemental excerpts of record that the appellant submitted and looking at the language on the actual CPO, it says that in order to terminate it, a form needs to be signed, which is the California Judicial Council Form 165. That's a court order. So that would require a judge? Right, a judge needs to sign that order. The court executive officer, there's certainly nothing in the record that indicates that the court executive officer is the person who has the ability to make the decision to remove an order from CLATS. I just wanted to add one more thing about previous cases in this court and the act of giving notice or filing documents has always been recognized as something that's very closely associated with the judicial process. And this court has found in the Castillo case and Morrison and Mullis that clerks are merely the conduit by the way judicial actions happen. So filing documents and giving notice are just part of the judicial function of resolving disputes. Unless your honors have any other questions. I just want to make sure I understand your argument. Your argument, I'm looking at the excerpt to record, is that you contend that this was not a self-executing document in the sense that it did not terminate on its own and that it required a court order and therefore because it required a court order, that was a function that came within the judicial function. Correct. All right. Thank you, your honors. Your honors, regarding the statement that counsel just made that the order was not self-executing or self-terminating, we disagree in the excerpts or the record that's been produced to the court in the appellant's criminal protective order probation statement. It says on page 2 that orders under penal code section 1203.097 are probationary orders and the court has jurisdiction as long as the defendant is on probation. That means that once he was no longer on probation, the criminal protective order automatically terminated. There was no order that had to be given to the clerks after that for his name to be removed. It was mandatory. They had to remove it by operation of law. It was terminated by operation of law and based on that, they were required, not based on their discretion, but as a duty to remove his name out of the collect system. Well, it says the court has jurisdiction. Where does it say it terminates? Well, on the excerpt that I produced, there's a mark right here on page 2. Do you see it, your honor? Well, I see page 2. Okay. Do you see where it's marked in the box with arrows? Yes. Okay. So it says that the court has jurisdiction as long as the defendant is on probation. Right, but he was no longer on probation as of December 14, 2011. He was no longer on probation. That means the order automatically terminated. That means that the court at that time or the clerk at the time was supposed to take his name out of the collect system. 2014. Where does that say that in the order? Well, we're interpreting that as such, your honor, because the court no longer had jurisdiction over the appellant regarding this criminal protective order. So on what basis do you conclude that as of December 14, 2011, he's no longer on probation? Because his probation terminated. Something happened where. Well, I'm looking at ER, I guess it's ER 4. It looks like it's a minute order from the court. Sure. And it says probation reinstated. Probation terminated unsuccessfully. Yes, your honor. That's quite the opposite of what you're telling me. Yes, your honor. So he was placed on a different type of probation, but the probation that involved the criminal protective order was terminated in December 2011. His public defender had acknowledged this, and the letter that was produced is in the excerpts of the record as well, as well as the district attorney's office. Well, I read that public defender letter. It doesn't quite say that. Yes, your honor. Well, the district attorney's office also said that his probation had terminated unsuccessfully on December 14, 2011. Right. But you're telling me it was terminated. Well, it was terminated in the context of the criminal protective order, your honor. It was terminated. I'm sorry, your honor. And how do I know that? Based on what the DA's office had informed the appellant, as well as what his attorney had informed him, that it was removed. This is why the appellant was allowed to be released from the Washington State Prison a year early from his prison sentence, because they found out that these mistakes had occurred. But all we have here is an entry that says probation reinstated, probation terminated unsuccessfully. Yes, your honor. And we're supposed to conclude that the probation was terminated successfully from that? Not that it was successful, your honor. Just that that particular probation that involved the criminal protective order was no longer in effect. That's all we're saying. Whether he had a subsequent probation after that, that has nothing to do with the criminal protective order that was in place that terminated in December of 2011. Right. But it says reinstated. It doesn't say new probation. Yes, your honor. But it has nothing to do with the criminal protective order that was in place regarding the original probation that he was given. Okay. Further questions? I've got one last question. This was a 12B6 dismissal? Yes, your honor. So I'm looking at all these things. How am I even looking at these things instead of just at the complaint? Excuse me, your honor. How am I looking at these evidentiary matters if it was a 12B6 dismissal? Well, these evidence or these statements were presented to the district court, your honor. And incorporated? Okay. Well, there we go. Okay. Very good. Thank you. Thank you both for your arguments. The case just arguably submitted for decision. Thank you. And we'll proceed to the next case on the oral argument calendar, which is Branca Cioso v. Saul.
judges: Thomas, W. Fletcher, Miller